[L. A. No. 20857. In Bank. Mar. 22, 1949.]

THE CITY OF NATIONAL CITY et al., Petitioners, v.
 GILBERT E. FRITZ, as City Mayor, etc., et al.,
 Respondents.

Burke, Marshall & Burke and Daniel G. Marshall for Petitioners.

Merideth L. Campbell, City Attorney, for Respondents.

CARTER, J.—The controversy in this proceeding involves the interpretation of a statute authorizing the establishment by municipal corporations of capital outlay funds (Stats. 1937, p. 1995, as amended last in 1945; Stats. 1945, p. 1867).

That act provides that the governing body of any city "empowered to levy and collect assessments or taxes may by ordinance provide for the levy and collection of assessments or taxes for the creation and accumulation of a fund for capital outlays." The general limitation on the right to impose taxes applies. "At any time after the creation of such a fund such governing body may transfer to such fund any unincumbered surplus funds remaining on hand in such city, ... at the end of any fiscal year.

"Whenever such fund is created in the manner aforesaid it shall remain inviolate for the making of any capital outlays and no moneys shall be disbursed therefrom excepting for such a purpose; . . . .

"*The term 'capital outlays' shall not be construed to include the construction, acquisition, extensions of, or additions to,*

*utilities, other than utilities for the furnishing of water supply."* (Emphasis added.)

In the instant case the city council passed an ordinance purporting to create a capital outlay fund pursuant to the act. There is a dispute in regard to whether the ordinance in fact achieved that end inasmuch as it did not provide for the levy of taxes or assessments for the creation of the fund. It merely created the fund. But in view of the result reached herein, it is not necessary to resolve that question. From the receipts from sale of real property of the city to the United States, $983,800.29 was ordered deposited in the fund by the city council and it is now there and unencumbered. The council has awarded contracts for the construction of sewers in the city in the sum of $675,287.77 but respondent mayor of the city refuses to sign the contracts, and respondent clerk refuses to transfer said sum to the general fund to meet the payments under those contracts, claiming that moneys in the capital outlay fund cannot be used for sewer purposes under the above quoted act for the reason that a sewer is a utility as used in the last sentence dealing with things for which the fund cannot be used. Petitioners, on the other hand, take the position (among others) that a sewer is not a utility as that term is used in the act. With the latter contention we agree for the following reasons.

The unqualified word "utility" has a broad meaning. It is defined as "quality or state of being useful; usefulness; profitableness to some desired end." (Webster's New Internat. Dict. (2d ed.) p. 2808.) (See also *Interstate National Gas Co.* v. *Gulley,* 4 F.Supp. 697, 699.) If that definition were applied to the statute in question, there would be practically no activity in which the city could use the money from the capital outlay fund because practically all of its property and public services are presumably for useful purposes. Thus the exception in the act (the italicized part thereof) for which funds may not be used would be broader than the main purpose of the act to authorize the creation of, and levy of taxes for, a capital outlay fund. Practically the only use that could be made of the fund would be for a water supply which is an exception carved out of an exception. These factors, coupled with the rule that exceptions in a statute are to be strictly construed (*Hurst* v. *City & County of San Francisco, ante,* p. 298 [201 P.2d 805]; *McAlpine* v. *Baumgartner,* 10 Cal.2d 409 [74 P.2d 753]; *Dufton* v. *Daniels,* 190 Cal. 577 [213 P. 949]; *Forbes* v. *City of Los*

*Angeles,* 101 Cal.App. 781 [282 P. 528]; Crawford, Statutory Construction, § 299), require that the word "utility" be interpreted to mean a "public utility," for as will be seen, that term as used here has a more narrow meaning than "utility."

We are convinced that the construction and maintenance of a sewer system is not a "public utility" within the meaning of the act. Generally speaking statutes should be construed in the light of other statutes dealing with the same subject matter. (*In re Phyle,* 30 Cal.2d 838 [186 P.2d 134]; *Stillwell* v. *State Bar,* 29 Cal.2d 119 [178 P.2d 313].) The term "public utilities," with reference to the power of a municipal corporation to acquire and operate them, customarily embraces an enterprise which was usually engaged in by private corporations or individuals such as supplying water and electricity to the inhabitants. In this state it never has been the custom to have sewers operated privately. There was some doubt whether municipal corporations could acquire and operate such enterprises (public utilities) until the amendment to the Constitution (Cal. Const., art. XI, § 19) in 1911 authorizing such corporations to supply their inhabitants with light, water, power, heat, transportation and means of communications (18 Cal.Jur. 1076), but the power of municipal corporations to construct and maintain sewers has always been broad and unquestioned; the power may be derived from the authority to construct and maintain streets. (See *Harter* v. *Barkley,* 158 Cal. 742 [112 P. 556]; *Kramer* v. *Los Angeles,* 147 Cal. 668 [82 P. 334]; *McBean* v. *City of Fresno,* 112 Cal. 159, 163 [44 P. 358, 53 Am.St.Rep. 191, 31 L.R.A. 794]; *City of Madera* v. *Black,* 181 Cal. 306, 313 [184 P. 397]). The Public Utilities Act of this state lists many activities as "public utilities" but no mention is made of sewers (Stats. 1915, p. 115, as amended).

For the foregoing reasons it is clear that the term "utilities" as used in the exception in the statute in question does not include sewers. The fund here involved may, therefore, be used for construction of sewers.

Let a peremptory writ of mandate issue as prayed for.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—Again the court has rendered what I consider to be an advisory opinion in a collusive proceeding

brought by a city against two of its officers. The result is a decision which places the stamp of the highest judicial approval upon financial transactions which affect every taxpayer of the city without any truly adversary presentation of the merits of the controversy. Moreover, the construction of the statute authorizing the establishment of a capital outlay fund may now be the unquestioned basis for action by the governing body of other cities. For the reasons I have stated in *City of Whittier* v. *Dixon,* 24 Cal.2d 664, 668 [151 P.2d 5, 153 A.L.R. 956]; *City and County of San Francisco* v. *Boyd,* 22 Cal.2d 685, 707 [140 P.2d 666]; *City and County of San Francisco* v. *Linares,* 16 Cal.2d 441, 448 [106 P.2d 369], I believe that this procedure is contrary to fundamental principles of the administration of justice.