[L.A. No. 32110. Mar. 27, 1989.]

TERI LYNN SCHMIDT et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
VALLEY MOBILE PARK INVESTMENTS et al., Real Parties in
Interest.

**COUNSEL**

James R. Provenza, Deborah L. Dorman, Joel Diringer, Lila Porter and Edward Alston for Petitioners.

James B. Morales and Richard S. Weiner as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Schramm & Raddue, Dale E. Hanst, Richard F. Lee, David C. Fainer and James P. Griffith for Real Parties in Interest.

W. Craig Biddle, Christian M. Keiner and Biddle & Hamilton as Amici Curiae on behalf of Real Parties in Interest.

Opinion

**ARGUELLES, J.***—In this case we must determine the validity, under California law, of a private mobilehome park rule limiting residence in the park to persons 25 years or older. The trial court found the rule valid, but the Court of Appeal disagreed, concluding that Civil Code section 798.76 barred a private mobilehome park owner from adopting or enforcing such a rule.[1] The Court of Appeal's interpretation of section 798.76, however, conflicted with the interpretation of the statute in another appellate court decision,[2] and we granted review to resolve the conflict.

In September 1988, while this matter was pending before us, Congress enacted new legislation (Pub.L. No. 100-430 (Sept. 13, 1988) 102 Stat. 1619, 1988 U.S. Code Cong. & Admin. News, No. 8), effective March 1989, which defendant[3] mobilehome park owners acknowledge will render their 25-years-or-older policy invalid in the future, at least as applied to families with minor children. Contrary to plaintiffs' suggestion, however, the new federal legislation does not render this proceeding inconsequential or moot, because plaintiffs seek damages for the mobilehome park owners' enforcement of the 25-years-or-older rule prior to the effective date of the new federal legislation and the validity of the park owners' conduct at that time necessarily turns on the proper interpretation of California law. Furthermore, the interpretation of the applicable California statutes will continue to affect the nature of the residence policies which private mobilehome parks in California may establish in the future in light of the new federal legislation. Thus, the state law issue posed by this case continues to have general significance.

As we shall explain, with respect to that state law issue we have concluded, contrary to the Court of Appeal's view, that the applicable California statutes permit the establishment and enforcement of such a rule in private mobilehome parks, and that neither the rule nor the related statutes are unconstitutional. Accordingly, we reverse the judgment of the Court of Appeal.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1] Section 798.76 provides: "The management [of a mobilehome park] may require that a purchaser of a mobilehome which will remain in the park, comply with any rule or regulation limiting residence to adults only."

Unless otherwise specified, all section references are to the Civil Code.

[2] *Dubreuil* v. *West Winds Mobile Lodge* (L.A. 32095), review granted August 15, 1985.

[3] Although this is a writ proceeding, in the interest of clarity we will refer to the parties by their designation in the underlying action.

I

In May 1983, three adult sisters—one over the age of 25 years, one 24 years old, and one 18 years old—entered into a contract to purchase a mobilehome in which the three intended to live with the minor child of the eldest sister. The mobilehome was located and was to remain in Ranch Club Mobile Estates, a mobilehome park in Buellton owned and operated by defendants. The sale was conditioned on defendants' acceptance of the sisters' application to rent space in the mobilehome park for this purpose.

Defendants rejected the application, however, relying on an existing park rule—adopted by defendants in 1977—requiring new residents in the park to be 25 years or older. After defendants had rejected the initial application, the sisters offered to live in the park without the minor, but this offer was also rejected, on the basis of the same 25-years-or-older rule.

The sisters and the minor then instituted the underlying action against defendants, seeking declaratory and injunctive relief as well as damages. Plaintiffs contended that defendants, by refusing to allow them to reside in the park on the ground that the minor and two of the sisters were under twenty-five years of age, had violated (1) the Unruh Civil Rights Act (§ 51 et seq. (hereafter Unruh Act)), (2) section 798.76, a provision of the Mobile-home Residency Law, and (3) various constitutional provisions.

After the trial court denied their request for a preliminary injunction, plaintiffs moved for summary judgment, relying on the foregoing undisputed facts. The trial court denied the summary judgment motion, concluding in the course of its ruling that defendants' 25-years-or-older rule was valid, as a matter of law, under the provisions of section 798.76.

Plaintiffs then sought a writ of mandate, and the Court of Appeal, after issuing an alternative writ and hearing argument, ruled in plaintiffs' favor. Relying on (1) the general public policy—reflected in the Unruh Act—disfavoring discrimination against children in housing and (2) various legislative enactments recognizing the critical shortage in this state of an adequate supply of affordable housing for families, the Court of Appeal construed section 798.76 to permit a mobilehome park owner to adopt a rule excluding children only where the park is specifically reserved for senior citizens.

Defendants petitioned for review, pointing out that the Court of Appeal's interpretation of section 798.76 conflicted with the interpretation of this same provision in another Court of Appeal opinion filed shortly before the

appellate decision in this case. (See, *ante,* p. 373, fn. 2.) We granted review to resolve the conflict.

## II

Before addressing the principal issue on which we granted review, we briefly respond to plaintiffs' suggestion that recent federal legislation renders the issue in this case insignificant.

In September 1988, Congress enacted the Fair Housing Amendments Act of 1988 (Pub.L. No. 100-430 (Sept. 13, 1988) 102 Stat. 1619, 1988 U.S. Code Cong. & Admin. News, No. 8), an act which makes substantial changes in the preexisting federal fair housing law. Among other significant changes, the act makes it unlawful for a business which engages in residential real estate related transactions to discriminate on the basis of "familial status," as well as on the previously forbidden grounds of race, color, religion, sex or national origin. (42 U.S.C. § 3605.) "Familial status" is defined to mean families which include children under the age of 18. (42 U.S.C. § 3602(k).)

While the new act generally bars discrimination in housing against families with children under 18, it also creates an exception for "housing for older persons" in which discrimination on the basis of familial status is not prohibited. (42 U.S.C. § 3607(b)(1).) "Housing for older persons," in turn, is defined to include, inter alia, housing which is (1) "intended for, and solely occupied by, persons 62 years of age or older," or (2) "intended and operated for occupancy by at least one person 55 years of age or older per unit" provided that such housing is specifically designed to meet the physical or social needs of older persons and meets other specified criteria. (42 U.S.C. § 3607(b)(2)(B) and (b)(2)(C).)[4]

■ Plaintiffs contend that because, under traditional supremacy principles, the new federal legislation takes precedence over conflicting state law, and because, under the new legislation, defendants' 25-years-or-older rule may not be validly applied to exclude families with children under the age of 18, the issue of state law presented by this case has been rendered insignificant. For several reasons, we cannot agree.

First, and most obviously, the new federal act clearly does not control plaintiffs' damage claim in this case. By its terms, the federal act does not

---

[4] The act also contains a "grandfather clause," providing that persons under the applicable age limits who were residing in housing when the federal act was enacted will not disqualify the housing from the statutory exemption for housing for older persons so long as the applicable age requirements are applied to all new occupants. (42 U.S.C. § 3607(b)(3).)

take effect until 180 days after its enactment (Pub.L. No. 100-430 (Sept. 13, 1988) § 13, 102 Stat. 1636), and nothing in the act purports to govern conduct—such as the actions of the mobilehome park owners at issue here—which occurred prior to the effective date of the statute. The validity of those actions, and the potential liability of the park owners, turn on the proper interpretation of preexisting state law.

Second, even with respect to the future, the new federal act does not totally eclipse the question of state law presented here. As we shall see, one of the points at issue in this case is whether the relevant California provisions prohibit a mobilehome park owner from adopting any age-based policy other than an 18-years-or-older rule. If state law does limit a mobilehome park owner's discretion in this fashion, then in the future mobilehome parks in California might well be prohibited from adopting the type of more narrowly defined age-based policies—i.e., a 62-years-or-older rule or a properly limited 55-years-or-older rule—which would qualify for the "housing for older persons" exemption under federal law. (See 42 U.S.C. § 3607(b)(2)(B) and (b)(2)(C).) Accordingly, the question of statutory interpretation before us is by no means eliminated by the recent federal enactment.

We now turn to the state law question.

### III

As noted above, the Court of Appeal in this case, relying on the general policies underlying the Unruh Act, concluded that section 798.76 (see *ante,* p. 373, fn. 1), a provision of the Mobilehome Residency Law, must properly be interpreted to permit a mobilehome park owner to adopt a rule excluding children only when the facility is reserved for senior citizens.

To place the statutory interpretation question in perspective, we begin with a brief chronological overview of the pertinent legislation and judicial authorities and then proceed to a more in-depth analysis of the specific statutory provisions.

### A.

The Legislature first adopted the broad antidiscrimination provisions of the Unruh Act in 1959. As originally enacted, section 51 expressly declared that all persons are entitled to full and equal accommodations and privileges in all business establishments "no matter what their race, color, religion, ancestry, or national origin . . . ." (Stats. 1959, ch. 1866, § 1, p. 4424.) Section 51 was early interpreted to apply to improper discrimination in the

housing field (see *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 468-471 [20 Cal.Rptr. 609, 370 P.2d 313]), but perhaps because age was not one of the specified bases of discrimination listed in the statute there were no early cases challenging the validity of rules limiting housing on the basis of age.

In 1970, this court concluded that the Unruh Act prohibited a shopping center from arbitrarily excluding a patron from the shopping center. (*In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992].) In reaching this conclusion, the *Cox* court held that section 51's identification of particular bases of discrimination—color, race, religion, ancestry and national origin—were intended to be "illustrative rather than restrictive" (3 Cal.3d at p. 216) and that the legislative history of the act demonstrated that section 51 was "intended to prohibit all arbitrary discrimination by business establishments." (*Ibid.*) Although—a decade later—the *Cox* decision was found to have significant implications for the validity of age-based restrictions in housing, no decision in the 1970's applied the Unruh Act to invalidate age limitations in any form of housing accommodations. (See, e.g., *Flowers* v. *John Burnham & Co.* (1971) 21 Cal.App.3d 700 [98 Cal.Rptr. 644] [upholding landlord's policy of excluding families with male children over the age of five]; cf. *Ritchey* v. *Villa Nueva Condominium Assn.* (1978) 81 Cal.App.3d 688, 692-694 [146 Cal.Rptr. 695, 100 A.L.R.3d 231] [upholding condominium association rule limiting portion of condominium project to persons 18 years of age or older, but no Unruh Act claim raised].)

Beginning in the late 1960's, the Legislature undertook significant statutory regulation of both mobilehomes and mobilehome parks, addressing a number of concerns that arose out of the unique features of the mobilehome park phenomenon. (See, e.g., Stats. 1967, ch. 1056, § 2, p. 2664; Stats. 1973, ch. 785, § 1, p. 1404; Stats. 1977, ch. 845, § 1, p. 2538.) In 1975, the Legislature amended former section 789.10 to protect the interests of mobilehome owners by placing limitations on a mobilehome park owner's discretion to disapprove the continued leasing of spaces in the mobilehome park to purchasers of mobilehomes located in the park. (Stats. 1975, ch. 146, § 3, pp. 280-281.) At the same time, however, the Legislature made it clear that a mobilehome park owner retained the right to condition its approval on the new lessee's compliance with the park's existing rules and regulations. Furthermore, in reserving the park owner's general discretion to adopt and reasonably enforce general rules and regulations, the 1975 amendment to former section 789.10 specifically preserved the park owner's right to adopt and enforce "any rule or regulation of the mobilehome park limiting residence within the park to adults only." In 1978, this "adults only" provision was moved to a separate provision—section 798.76—as part of the newly reorganized Mobilehome Residency Law (Stats. 1978, ch. 1031, § 1,

p. 3178), but the general legislative policy of the 1975 act was preserved intact.

In 1982, a little more than a decade after the *Cox* decision, *supra,* 3 Cal.3d 205, this court, in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161], held for the first time that the general provisions of section 51 of the Unruh Act prohibited an ordinary apartment complex from adopting a rule which excluded all families with children from the complex, distinguishing the age-based exclusionary policy in that case from "the age-limited admission policies of retirement communities or housing complexes reserved for older citizens." (30 Cal.3d at p. 742.) In the course of the *Marina Point* decision, however, our court took specific note of the existence of section 798.76, observing that "mobile home parks constitute the only housing facilities in which the California Legislature has explicitly authorized 'adult only' restrictions. (See Civ. Code, §§ 798.76, 799.5.)" (30 Cal.3d at p. 743, fn. 11.) In 1983, this court held in *O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790 [191 Cal.Rptr. 320, 662 P.2d 427] that the principle of *Marina Point*—generally prohibiting a blanket rule excluding families with children from housing—applied to the sale of units by a condominium association as well as to the rental of units in an apartment building, but the *O'Connor* court had no occasion to discuss the mobilehome park issue.

In 1984, the Legislature considered a flurry of bills introduced in the wake of the *Marina Point, supra,* 30 Cal.3d 721, and *O'Connor, supra,* 33 Cal.3d 790, decisions, and ultimately amended the Unruh Act by adding two new provisions, sections 51.2 and 51.3, which directly address the age-discrimination-in-housing issue. (Stats. 1984, ch. 787, § 1, p. 2780; Stats. 1984, ch. 1333, § 1, p. 4681.) We discuss the 1984 amendments to the Unruh Act in some detail below, but at this point it is sufficient to note that in fashioning the 1984 legislation to clarify the application of the Unruh Act in light of *Marina Point* and *O'Connor* the Legislature (1) did not modify or repeal the provisions of section 798.76 governing mobilehome parks and (2) specifically excluded mobilehome developments from the definition of "housing" contained in section 51.3. (§ 51.3, former subd. (c)(8), enacted Stats. 1984, ch. 1333, § 1, p. 4681.) In 1985, the Legislature modified some of the definitions in section 51.3, but again excluded mobilehomes in the revised definition of "housing." (§ 51.3, subd. (c)(4), enacted Stats. 1985, ch. 1505, § 2, p. 5551.)

It is against this background of legislative and judicial action that we must evaluate plaintiffs' challenge to the mobilehome park rule at issue here. We begin with an analysis of section 798.76.

B.

Section 798.76 provides in full: "The management [of a mobilehome park] may require that a purchaser of a mobilehome which will remain in the park, comply with any rule or regulation limiting residence to adults only."

In asserting that defendants' 25-years-or-older rule is invalid under section 798.76, plaintiffs advance two distinct, and somewhat inconsistent, arguments. ▮ First, plaintiffs maintain that the statutory language permitting a park owner to require compliance with "any rule or regulation limiting residence to *adults only*" (italics added) should properly be construed to authorize only a rule or regulation limiting residence to "senior citizens," and that the 25-years-or-older rule is invalid because it does not limit residence to senior citizens. ▮ Second, plaintiffs alternatively contend that if "adults only" is not interpreted to mean "senior citizens only," then the statute must necessarily be read to permit a mobilehome park owner only to adopt a rule limiting residence in the park to persons 18 years or older—i.e., the park owner must permit the residence of *all* "adults"—and that the statute may not be construed to permit a park owner to adopt any rule which limits residence to a subcategory of adults, e.g., a rule limiting residents to those 25 years or older, or 45 years or older or 62 years or older. We conclude that neither of plaintiffs' arguments can be sustained.

1.

▮ With respect to the initial contention, we think it is clear that the plain language of the statute will not bear the meaning plaintiffs propose. "Adult" is, of course, plainly not the equivalent of "senior citizen," and other statutory provisions concerning senior citizens and mobilehomes— enacted contemporaneously with section 798.76—demonstrate that the Legislature has used quite clear and specific language when it has intended to refer to senior or elderly citizens. (See Health & Saf. Code, §§ 50540-50547 [Mobilehome Parks for Senior Citizens Demonstration Project], enacted Stats. 1978, ch. 984, § 1, p. 3047.)

Furthermore, there is absolutely no indication in the background or legislative history of section 798.76 to suggest that the Legislature, in adopting this provision, intended to use the term "adults only" in such an unconventional manner. As we have seen, when this statutory language was first adopted in 1975, no case had either held or intimated that age-based housing policies were valid only within the senior citizen context. In this setting, there simply is no realistic basis for reading the "adults only" language of

section 798.76 as bearing such an unnatural meaning. We discuss below whether subsequent developments in the interpretation of, and amendments to, the Unruh Act can properly be viewed as altering the effect of section 798.76, but insofar as the meaning of section 798.76 itself is concerned, we find no legitimate ground for interpreting the section to permit only "senior citizens only" rules.

2.

With respect to plaintiffs' alternative contention—that section 798.76 should be read to permit mobilehome parks to enforce only a rule limiting residence to those 18 years or older, and to preclude the enforcement of any other rule limiting residence, for example, to those 25 years or older, or 45 years or older, or 62 years or older—we again conclude that the claim is untenable in light of both the language and legislative history of the section.

As the language of the statute indicates, section 798.76 preserves a mobilehome park owner's right to require a purchaser of a mobilehome which will remain in the park to "comply with *any* rule or regulation limiting residence to adults only." (Italics added.) In our view, the use of the term "any" in this provision suggests that the Legislature did not intend to limit a park owner to only one particular kind of "adults only" rule. Although all persons over the age of 18 are adults (see § 25.1, subd. (b)) and thus a rule limiting residence to persons 18 years or older would certainly constitute an "adults only" rule, a rule limiting residence in a mobilehome park to persons 25 years or older, or 45 years or older, or 62 years or older could also reasonably be viewed as an "adults only" rule. (See 65 Cal.Ops.Atty.Gen. 559, 561-562 (1982).)[5] By sanctioning "any" adults-only rule or regulation, the statutory language implies that the Legislature recognized the possibility of a variety of such rules and did not intend to limit a park owner's discretion to a particular version.

The legislative history of section 798.76 supports this reading. As already noted, the pertinent language of section 798.76 derives from a 1975 amendment to former section 789.10. As amended in 1975, former section 789.10—after precluding a park owner from effectively prohibiting the sale of mobilehomes within the park—went on to provide that "[n]othing in this section shall be construed to deny the ownership or management the right

---

[5] As the Attorney General's opinion noted: "The Mobilehome Residency Law does not define the term 'adults only.' It could mean a rule limiting residents to persons 18 years of age or older. On the other hand, the term could embrace a variety of more narrowly defined adult-only rules. An adults-only device might mean '45 or older only' or '65 or older only.' [Citation.]" (65 Cal.Ops.Atty.Gen. at pp. 561-562.)

to require prior approval of a purchaser if the mobilehome will remain located in the mobilehome park or other facility; provided, however, that the approval of a purchaser cannot be withheld if the purchaser as a prospective tenant has the financial ability to pay the rent and charges of the park *unless, the ownership or management reasonably determines that the prospective tenant will not,* based on prior tenancies, *comply with the requirements of the rules and regulations of the mobilehome park. The ownership or management may require that the purchaser as a prospective tenant comply with any rule or regulation of the mobilehome park limiting residence within the park to adults only.*" (Italics added.) (Stats. 1975, ch. 146, § 3, pp. 280-281.)

The pertinent statutes dealing with the rights of mobilehome owners were reorganized in 1978 as part of the enactment of a comprehensive Mobilehome Residency Law, and, as we have seen, the last sentence of former section 789.10—referring to adults-only rules—was moved to a separate provision, section 798.76. The balance of former section 789.10 was retained, however, in section 798.74 (Stats. 1978, ch. 541, § 2, p. 1703), which continues to provide—in general terms—that a mobilehome park owner may withhold approval of a sale of a mobilehome that is to remain in the park if the park owner reasonably determines that the purchaser of the mobilehome will not comply "with the rules and regulations of the park." Thus, when the related statutes are read as a whole, it becomes evident that section 798.76 is simply one aspect of an overall legislative policy recognizing that while some limits have been placed on a mobilehome park owner's discretion to disapprove the sale of a mobilehome which is to remain within its park, the owner retains the prerogative to establish and enforce the general rules and regulations that will determine the character of its park. (See also § 798.56, subd. (c) [permitting mobilehome park owner to terminate tenancy if homeowner or resident fails to comply with "reasonable rule or regulation of the park as set forth in the rental agreement or any amendment thereof"].) Thus, read in context, section 798.76 cannot reasonably be interpreted narrowly to restrict a park owner's alternatives in devising an age-based rule for its park.

Finally, viewing the matter in very practical terms, we cannot reasonably conclude that the Legislature, in adopting section 798.76, intended to prohibit mobilehome park owners from adopting any age-based rule other than an 18-years-or-older rule. A recent survey of mobilehome parks in California indicates that mobilehome parks throughout the state have adopted a great variety of age-based rules or regulations, with minimum age limits ranging from 18 years of age, to 25 years, 45 years, 50 years, and 60 years. (See Cal. Dept. of Housing & Community Development, Mobilehome Parks in California: A Survey of Mobilehome Park Owners Pursuant to

Sen. Bill No. 1835 (Feb. 1986) pp. 31, 33.) Although the survey did not seek to determine how long such policies have been in effect, there is nothing to suggest that this variation is only of recent vintage. To read section 798.76 as plaintiffs propose, we would have to conclude that the Legislature, in enacting the predecessor to section 798.76 in 1975, intended to invalidate all age-based rules in mobilehome parks other than 18-years-and-older rules, thus prohibiting a mobilehome park owner from establishing a park reserved, for example, for persons 55 years or over. In light of the language and legislative history of the provision reviewed above, we cannot reasonably ascribe any such intention to the Legislature.[6] Instead, we conclude that the Legislature, in enacting this provision, intended to make it clear that while it was limiting a park owner's discretion in some respects, the statutory limitation should not be construed to invalidate any of the variety of age-based rules or regulations then in effect.[7]

Thus, we conclude that the 25-years-or-older rule at issue here does not conflict with section 798.76.[8]

## C.

Plaintiffs additionally contend that to the extent such an interpretation of section 798.76 is inconsistent with the broad antidiscrimination policy embodied in the Unruh Act, the Unruh Act policy must prevail over the language of section 798.76. Both the Mobilehome Residency Law and the Unruh Act are, however, statutory enactments of equal legislative digni-

---

[6] When the Legislature adopted the relevant statutory language in 1975, of course, it could not have anticipated the recent federal legislation exempting properly qualified "housing for older persons" from the reach of the new prohibition on discrimination against families with minor children. Nonetheless, it would certainly be anomalous, and clearly contrary to the general legislative design, if section 798.76 were to be read to preclude a mobilehome park owner from adopting any age-based rule other than an 18-year-or-older rule, thereby prohibiting mobilehome park owners in California from adopting the type of more refined adults-only rule which would qualify for the federal exemption.

[7] Although the Fair Employment and Housing Commission reached a contrary conclusion in a 1984 administrative decision (see *DFEH* v. *Carefree Ranch Mobile Home Park* (Dec. 7, 1984) FEHC Dec. No. 84-31, at pp. 17-18 [Cont.Ed.Bar, 1984-1985 Precedential Decs., CEB 12, at pp. 17-18]), in reaching its conclusion the commission failed to take into account either the statutory authorization of "any" adults-only rule or the legislative history of section 798.76.

[8] In reaching a contrary conclusion, the dissent relies in part on the asserted relationship between section 51.2 and section 798.76. (See *post,* pp. 392-393.) The dissent's analysis, however, ignores the fact that section 51.2 was not enacted until nine years after the relevant language of section 798.76 was first adopted by the Legislature. As we have explained, in order to read section 798.76 in the manner the dissent proposes, we would have to find that when the Legislature enacted this language in 1975 it intended to prohibit any mobilehome park owner from adopting or maintaining a senior-citizen-only policy which, for example, limited residents to persons 50, 55, or 60 years of age or older. In our view, such an intent cannot plausibly be ascribed to the drafters or proponents of section 798.76.

ty, and while the Unruh Act unquestionably embodies a fundamental public policy in this state, the Unruh Act does not, by virtue of the importance of its general policy alone, necessarily prevail over other inconsistent statutes. The Legislature is free, of course, to repeal section 798.76 in whole or in part, or to subordinate the provisions of section 798.76 to any other legislation, including the Unruh Act. But the decision whether the broad policy of the Unruh Act should supersede the provisions of 798.76 is a matter of legislative, not judicial, prerogative. Our inquiry must be whether the Legislature has decreed that the provisions of the Unruh Act are to displace section 798.76. As we shall see, the Legislature clearly has not done so.

To begin with, it is evident that prior to the 1984 amendments to the Unruh Act, there was nothing in the Unruh Act to suggest that it was intended to override the provisions of section 798.76. When section 798.76 was enacted, no provision in the Unruh Act specifically addressed the validity of age-based housing rules. Under traditional principles of statutory interpretation, there can be no question but that the later enacted and more specific provisions of section 798.76 relating to adults-only rules in mobilehome parks would prevail over the more general provisions of the Unruh Act. Indeed, as we have noted above, in *Marina Point, supra,* 30 Cal.3d 721—the decision which first construed the Unruh Act as generally prohibiting the enforcement of rules excluding children from housing—this court clearly treated section 798.76 as an express statutory exception to the general policy of the Unruh Act, permitting adult-only policies in the mobilehome park context. (30 Cal.3d at pp. 735, fn. 7, 743, fn. 11.) Thus, prior to the 1984 amendments to the Unruh Act, section 798.76 clearly governed the validity of age-based rules in mobilehome parks.

In 1984, after our decisions in *Marina Point, supra,* 30 Cal.3d 721, and *O'Connnor, supra,* 33 Cal.3d 790, the Legislature specifically turned its attention to the question of the validity of age-based discrimination in housing under the Unruh Act. Numerous bills were introduced proposing a variety of solutions, and the Legislature ultimately added two new provisions to the Unruh Act—sections 51.2 and 51.3—specifying that the legislation was "intended to clarify the holdings in Marina Point . . . and O'Connor . . . ." (§ 51.2, subd. (b).) Section 51.2 provides that "[s]ection 51 shall be construed to prohibit a business establishment from discriminating in the sale or rental of housing based upon age" but that "[w]here accommodations are designed to meet the physical and social needs of senior citizens, a business establishment may establish and preserve such housing for senior citizens, *pursuant to Section 51.3* . . . ." (Italics added.)

(§ 51.2, subd. (a).) Section 51.3, in turn, establishes specific prerequisites for senior citizen housing.[9]

---

[9] Sections 51.2 and 51.3 currently provide in full: Section 51.2: "(a) Section 51 shall be construed to prohibit a business establishment from discriminating in the sale or rental of housing based upon age. Where accommodations are designed to meet the physical and social needs of senior citizens, a business establishment may establish and preserve such housing for senior citizens, pursuant to Section 51.3 of the Civil Code. [¶] (b) This section is intended to clarify the holdings in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 72[1], and *O'Connor* v. *Village Green Owners Association* (1983) 33 Cal.3d 790."

Section 51.3: "(a) The Legislature finds and declares that this section is essential to establish and preserve specially designed accessible housing for senior citizens. There are senior citizens who need special living environments and services, and find that there is an inadequate supply of this type of housing in the state. [¶] (b) The Legislature finds and declares that different age limitations for senior citizen housing are appropriate in recognition of the size of a development in relationship to the community in which it is located. [¶] (c) For the purposes of this section, the following definitions apply: [¶] (1) " 'Qualifying resident' " or " 'senior citizen' " means a person 62 years of age or older, or 55 years of age or older in a senior citizen housing development. [¶] (2) " 'Qualified permanent resident' " means a person who meets all of the following requirements: (A) Was residing with the qualifying resident or senior citizen prior to the death, hospitalization, or other prolonged absence of, or the dissolution of marriage with, the qualifying resident or senior citizen. [¶] (B) Was 45 years of age or older, or was a spouse, cohabitant, or person providing primary physical or economic support to the qualifying resident or senior citizen. [¶] (C) Has an ownership interest in, or is in expectation of an ownership interest in, the dwelling unit within the housing development that limits occupancy, residency, or use on the basis of age. [¶] (3) " 'Senior citizen housing development' " means a residential development consisting of at least 150 dwelling units in a standard metropolitan statistical area or at least 35 dwelling units in any other area which is developed for, or substantially rehabilitated or renovated for, senior citizens. For the purpose of computing the number of dwelling units within that development, the number of dwelling units developed, whether in single or multiple phases, shall be included in the computation. Developments commenced after July 1, 1986, shall be required to have been issued a public report as a senior citizen housing development under Section 11010.05 of the Business and Professions Code. [¶] (4) " 'Dwelling unit' " or " 'housing' " means any residential accommodation other than a mobilehome. [¶] (5) " 'Cohabitant' " means persons who live together as husband and wife. [¶] (d) The covenants, conditions, and restrictions or other documents or written policy shall not limit occupancy, residency, or use on the basis of age more proscriptively than to require that one person in residence in each dwelling unit may be required to be a senior citizen and that each other resident in the same dwelling unit may be required to be a qualified permanent resident. [¶] (e) The covenants, conditions, and restrictions or other documents or written policy shall permit temporary residency, as a guest of a senior citizen or qualified permanent resident, by a person of less than 45 years of age for periods of time, not less than 60 days in any year, which are specified in the covenants, conditions, and restrictions or other documents or written policy. [¶] (f) Upon the death or dissolution of marriage, or upon hospitalization, or other prolonged absence of the qualifying resident, any qualified permanent resident shall be entitled to continue his or her occupancy, residency, or use of the dwelling unit. [¶] (g) The condominium, stock cooperative, limited-equity housing cooperative, planned development, or multiple-family residential rental property shall have been developed for, and initially been put to use as, housing for senior citizens, or shall have been substantially rehabilitated or renovated for, and immediately afterward put to use as, housing for senior citizens, as provided in this section. [¶] The covenants, conditions, and restrictions or other documents or written policies applicable to any condominium, stock cooperative, limited-equity housing cooperative, planned development, or multiple-family residential property which contained age restrictions on January 1, 1984, shall be enforceable only to the

In adopting these provisions to govern the *general* validity of age discrimination in housing, however, the Legislature did not repeal or modify section 798.76's provisions sanctioning the enforcement of any adults-only rule or regulation *in mobilehome parks,* but, on the contrary, defined the term "housing" in section 51.3 to mean "all residential accommodations *other than mobilehome developments.*" (Italics added.) (§ 51.3, former subd. (c)(3).)[10] On its face, this language appears clearly to indicate an intent to exclude mobilehome parks from the reach of the new Unruh Act provisions.

Although plaintiffs acknowledge that mobilehome developments were specifically excluded from the definition of "housing" in the 1984 legislation, they contend that because section 51.3, subdivision (c) provides that its definitions are "for purposes of *this section*" (italics added), the exclusion of mobilehomes from the definition of "housing" in section 51.3, subdivision (c) should be interpreted only to exclude mobilehomes from the special requirements for senior citizen housing embodied in section 51.3, and should not be read to exclude mobilehomes from the general reach of section 51.2. For several reasons, we find plaintiffs' proposed reading untenable.

First, if former section 51.3, subdivision (c)(3) (now § 51.3, subd. (c)(4)) were to be construed as excluding mobilehomes from the reach of section 51.3 but not from section 51.2, the result of that interpretation would not be—as plaintiffs suggest—to relieve mobilehome parks from the specific requirements for senior citizen housing imposed by section 51.3. Plaintiffs' argument overlooks the fact that section 51.3 is the provision which provides the requisite statutory authority for owners of housing to adopt the kind of senior citizen housing that will be exempted from section 51.2.[11] Accordingly, if the statutory exclusion of mobilehomes were interpreted to apply only to section 51.3 and mobilehome parks were subject to the general provisions of section 51.2, the result would be that mobilehome parks would be the only type of housing in the state in which there could be *no* senior

---

extent permitted by this section, notwithstanding lower age restrictions contained in those policies. [¶] Any person who has the right to reside in, occupy, or use the housing or an unimproved lot subject to this section on January 1, 1985, shall not be deprived of the right to continue that residency, occupancy, or use as the result of the enactment of this section."

[10] As noted above, in 1985 the Legislature modified the provisions of section 51.3, subdivision (c) somewhat, and moved the definition of "housing" from subdivision (c)(3) to subdivision (c)(4). Section 51.3, subdivision (c)(4) currently provides that " '[d]welling unit' or 'housing' means any residential accommodation other than a mobilehome."

[11] Section 51.2, subdivision (a) provides in this regard: "Section 51 shall be construed to prohibit a business establishment from discriminating in the sale or rental of housing based upon age. Where accommodations are designed to meet the physical and social needs of senior citizens, a business establishment may establish and preserve such housing for senior citizens, *pursuant to Section 51.3 of the Civil Code.*" (Italics added.)

citizen housing at all. That conclusion, of course, would clearly be contrary to the Legislature's intent.

Second, a careful review of the legislative history of the 1984 legislation makes it quite clear that sections 51.2 and 51.3 were intended to be read together and that the Legislature made a deliberate decision to exclude mobilehome parks from the reach of the legislation and to preserve section 798.76 intact.

Sections 51.2 and 51.3 emerged from two of the numerous bills that were introduced in the aftermath of *Marina Point, supra,* 30 Cal.3d 721, and *O'Connor, supra,* 33 Cal.3d 790, to attempt to clarify the age-discrimination-in-housing issue. Section 51.2 was enacted by Assembly Bill No. 3909, 1983-1984 Regular Session (hereafter AB 3909), and section 51.3 by Senate Bill No. 1553, 1983-1984 Regular Session (hereafter SB 1553).

As originally introduced in February 1984, AB 3909 proposed (1) the adoption of a new provision—section 51.4—generally prohibiting business establishments from discriminating on the basis of age or physical disability but providing that "[w]here accommodations are specially designed accessible housing [defined thereafter], a business establishment may establish and preserve such housing for senior citizens and physically disabled persons," and (2) *the amendment of section 798.76* to limit the enforcement of adults-only rules in mobilehome parks to parks which constituted "specially designed accessible housing for senior citizens and physically disabled persons," as defined in the proposed section 51.4. (AB 3909 (as introduced Feb. 17, 1984).) AB 3909 was, however, amended numerous times before its initial passage by the Assembly in May 1984 (AB 3909, 2 Assem. Final Hist. (1983-1984 Reg. Sess.) p. 2373), and in the course of its deliberations *the Assembly specifically deleted the portion of the bill which would have modified section 798.76.* (Assem. Amend. to AB 3909, Apr. 23, 1984.)

SB 1553, like AB 3909, was introduced in February 1984. As originally drafted, SB 1553 proposed the adoption of a new provision—designated section 51.2—specifying the conditions under which condominiums, stock cooperatives, planned developments and limited equity housing cooperatives could establish restricted housing for "senior citizens, the retired, or the disabled;" it contained no specific reference to mobilehome parks. (SB 1553 (as introduced Feb. 2, 1984).) SB 1553 was initially passed by the Senate in this form in May 1984. (SB 1553, Sen. Final Hist. (1983-1984 Reg. Sess.) p. 949.)

In June 1984, as a result of extensive negotiations and compromises by the proponents of the proposed measures, both bills were substantially

revised "to provide a consistent and cohesive set of amendments to the Unruh Civil Rights Act." (See Sen. Housing and Urban Affairs Comm., Rep. on AB 3909 (June 29, 1984).) At that point, AB 3909 was amended to incorporate the provisions of a newly proposed section 51.2, and SB 1553 was amended to incorporate the provisions of a newly proposed section 51.3. Although the Legislature decided to permit each bill to retain an independent identity and to be enacted separately, the content of the legislation made it clear that the two provisions were intended to compose a single, integrated scheme, and each bill contained a provision specifying that it would not take effect unless the other was enacted. (Sen. Amend. to AB 3909, July 5, 1984, § 2; Assem. Amend. to SB 1553, Aug. 6, 1984, § 5.) It was at this time—after the two bills had been merged into an integrated scheme—that a general definition of "housing"—to mean "all residential accommodations other than mobilehome developments"—was first added to the legislation. (Assem. Amend. to SB 1553, Aug. 6, 1984, § 1.)

When this legislative history is viewed as a whole, the legislative intent is evident. As we have seen, although AB 3909, as originally introduced, proposed a modification of section 798.76 which would have imposed the same limitations in mobilehome parks as in all other housing, the Legislature eliminated that proposed modification of section 798.76 in the course of its deliberations and instead adopted a comprehensive legislative package which defined "housing" to specifically exclude mobilehome developments. In light of this history, we think that it is inescapable that one of the compromises reached in the legislative process was to exclude mobilehome parks—the one category of housing as to which there was an already existing statutory provision—from the reach of the new Unruh Act provisions.[12]

---

[12] Although plaintiffs suggest that this interpretation of legislative intent is belied by the legislative history of one of the other related bills—Senate Bill No. 1184, 1983-1984 Regular Session (hereafter SB 1184)—which was considered by the Legislature contemporaneously with AB 3909 and SB 1553, we believe that, on the contrary, the history of SB 1184 provides further support for the above conclusion.

SB 1184 was initially introduced in March 1983. As amended and initially passed by the Senate in January 1984, that bill would have specifically authorized mobilehome parks to adopt rules providing for "adults only," "seniors only," or "family park" residency. (Sen. Amend. to SB 1184, Jan. 23, 1984.) In June 1984, the bill was amended in the Assembly so as to modify section 798.76 by substituting "seniors only" for "adults only" and defining "seniors only" to mean a rule limiting residency in a mobilehome park "to adults 55 years of age or older, but in the case of two or more adults, only one adult need be 55 years of age or older." (Assem. Amend to SB 1184, June 12, 1984.) The Assembly passed the bill as so amended on June 18, and SB 1184 returned to the Senate. On July 2, 1984, however—while the Senate was in the process of considering the newly revised versions of AB 3909 and SB 1553—the Senate refused to concur in the Assembly revisions of SB 1184 by a 30-to-1 vote. (SB 1184, Sen. Final Hist. (1983-1984 Reg. Sess.) p. 716.) After the passage of AB 3909 and SB 1553, SB 1184 died in conference committee. (*Ibid.*)

Although plaintiffs attempt to argue that this chronology demonstrates that the Legislature, in passing AB 3909 and SB 1553, intended to extend section 51.2's coverage to all

Accordingly, we conclude that the statutes on which plaintiffs rely—sections 798.76, 51.2 and 51.3—do not invalidate defendants' 25-years-or-older rule.

## IV

Finally, plaintiffs claim that if section 798.76 permits a mobilehome park owner to enforce a rule excluding persons under 25 from a mobilehome park, as we have held, the statute is unconstitutional, violating their rights of familial privacy and equal protection. In support of their constitutional claims, plaintiffs rely, inter alia, on *Moore* v. *East Cleveland* (1977) 431 U.S. 494 [52 L.Ed.2d 531, 97 S.Ct. 1932] and *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219], decisions in which the United States Supreme Court and this court invalidated local zoning ordinances which impinged on an individual's right to live with members of an extended family (*Moore*) or with unrelated persons (*Adamson*). For a number of reasons, plaintiffs' constitutional challenge lacks merit.

First, both the *Moore, supra,* 431 U.S. 494, and *Adamson, supra,* 27 Cal.3d 123, decisions are clearly distinguishable from the present case in a crucial respect. The restriction at issue in each of those cases was a *state-imposed* rule directly limiting an individual's right to live with whom he or she wanted; in each case, a governmental body had made the substantive decision to limit individual living arrangements within a community. In this case, by contrast, the state, in adopting section 798.76, has not itself established a rule limiting living arrangements or restricting housing to particular age groups, but has simply left that decision—in the private mobilehome park context —to the owner of the mobilehome park. Contrary to plaintiffs' contention, it is not true that, absent section 798.76, a private mobilehome park owner would not have the authority to adopt an age-based housing policy for its park; a park owner's authority to adopt such a rule arises from its general common law property rights in the mobilehome park, rights which clearly preexisted the enactment of section 798.76. Nothing in *Adamson* or *Moore* suggests that constitutional guarantees are violated by the enactment of a statute which simply recognizes the continuing existence of a private property owner's authority in this respect. (See generally *Kruger* v.

---

housing—including mobilehomes—but to reserve for future legislation, or judicial resolution, the contours of permissible seniors-only rules in mobilehome parks, we think that the Senate's July 2 rejection of the Assembly's proposed modification of section 798.76 is more reasonably understood as a decision to leave the existing statutory provision as to mobilehome parks intact.

*Wells Fargo Bank* (1974) 11 Cal.3d 352, 357-364 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266].)[13]

Second, even if plaintiffs were able to successfully surmount the "state action" hurdle in this case,[14] their constitutional challenge to defendants' age-based housing policy would still lack merit. To begin with, although plaintiffs contend that all classifications on the basis of age should be viewed as constitutionally "suspect" and should be subjected to "strict scrutiny" under the equal protection clause, past decisions—both in this state and in other jurisdictions—have declined to consider age classifications on a constitutional par with classifications which treat persons differently because of their race or ethnic origin (see, e.g., *In re Nancy C.* (1972) 28 Cal.App.3d 747, 757 [105 Cal.Rptr. 113]; *Ames* v. *City of Hermosa Beach* (1971) 16 Cal.App.3d 146, 153 [93 Cal.Rptr. 786]; *Massachusetts Bd. of Retirement* v. *Murgia* (1976) 427 U.S. 307, 313-314 [49 L.Ed.2d 520, 524-525, 96 S.Ct. 2562]) and we find no persuasive reason for equating the two. (See generally Schuck, *The Graying of Civil Rights Law: The Age Discrimination Act of 1975* (1979) 89 Yale L.J. 27, 31-38.) Furthermore, although the constitutional right of "familial privacy" undoubtedly encompasses a parent's right to live with his or her child (see, e.g., *Moore, supra,* 431 U.S. 494, 500-506 [52 L.Ed.2d 531, 538-541]), the mobilehome park's 25-years-or-older policy at issue here does not, of course, purport to compel the separation of parent and child or to preclude the family from living together in an entire city (cf., e.g., *Moore, supra,* 431 U.S. 494; *Molino* v. *Mayer and Council of Bor. of Glassboro* (1971) 116 N.J.Super. 195 [281 A.2d 401, 404-406]) or neighbor-

---

[13] As we explained in *Kruger,* the "cases predicating state action upon the impact of a statute on private behavior fall generally into three categories. The first . . . consists of cases which adjudicated statutes that *compelled* private action. The second category encompasses those statutes which, while not compelling private action, endorse and *encourage* that action as state policy. The third group comprises the decisions in which the statutes create a private right . . . ." (Original italics, footnotes omitted.) (11 Cal.3d 352, 361.) As in *Kruger,* section 798.76 does not fall into any of these categories, since it neither creates the park owner's authority to adopt residency rules for its private mobilehome park, nor compels or encourages a park owner to impose adults-only rules; like the statute at issue in *Kruger,* section 798.76 simply takes a "neutral stance" (11 Cal.3d at p. 362), recognizing the park owner's authority in this regard without seeking to encourage the adoption of such rules as state policy.

[14] In this regard, plaintiffs rely on a number of lower court cases which—in quite distinct factual contexts—have found that the state constitutional privacy provision applies to private as well as to state conduct. (See, e.g., *Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825 [134 Cal.Rptr. 839] [private university's alleged dissemination of information from student application for unauthorized purposes]; *Chico Fem. Women's Hlth. Cr.* v. *Butte Glenn Med. S.* (E.D.Cal. 1983) 557 F.Supp. 1190 [private medical association's alleged interference with health center patients' exercise of reproductive rights].) Because we conclude that the rule at issue here would not be unconstitutional even if the state action requirement were met, we have no occasion in this case to consider under what circumstances, if any, purely private action by a property owner or landlord would constitute a violation of the state constitutional privacy provision.

hood (cf. *Adamson, supra,* 27 Cal.3d 123), but simply denies the family access to a limited number of housing units. In *Bynes* v. *Toll* (2d Cir. 1975) 512 F.2d 252, 254-256, the Second Circuit upheld a state university regulation excluding married students with children from university housing, explaining that the students' unquestioned constitutional right to procreate and to bring up their children did not mean that the university was "constitutionally mandated to provide them campus housing to perform their protected prerogatives" (512 F.2d at p. 255), and, on similar grounds, courts of other states which have considered the validity of age-based housing regulations comparable to the rule at issue here have—in the absence of a legislative measure barring such age restrictions—uniformly upheld the general constitutional validity of such rules. (See, e.g., *White Egret Condominium* v. *Franklin* (Fla. 1979) 379 So.2d 346, 349-352; *Hill* v. *Fontaine Condominium Association, Inc.* (1985) 255 Ga. 24 [334 S.E.2d 690, 691]; *Covered Bridge Condominium Ass'n* v. *Chambliss* (Tex. Ct. App. 1985) 705 S.W.2d 211, 212-213; *Riley* v. *Stoves* (1974) 22 Ariz.App. 223 [526 P.2d 747, 751-753]; *Lamont Bldg. Co.* v. *Court* (1946) 147 Ohio St. 183 [34 Ohio Ops. 73, 70 N.E.2d. 447, 448, 169 A.L.R. 133].)[15] ■■■■

■ Particularly in light of the distinct characteristics of mobilehome parks—e.g., the generally greater percentage of older residents,[16] the smaller size of the units, the more substantial potential lack of privacy and the greater expense that might have to be incurred in rendering such a park safe for children residents—we agree with the conclusion of the above cited cases that such an age-based regulation is neither irrational nor arbitrary or otherwise vulnerable to constitutional attack.[17]

---

[15] One federal appellate decision—*Halet* v. *Wend Inv. Co.* (9th Cir. 1982) 672 F.2d 1305—did conclude that a lower court had erred in sustaining a demurrer to a constitutional challenge to an adults-only housing policy and remanded the matter to the lower court for a determination of whether a "genuinely significant deprivation" of a fundamental right had occurred. (672 F.2d at p. 1311.) The lower court's decision on remand has not been reported, however, and a subsequent circuit court decision has questioned the validity of *Halet*'s conclusion. (See *Hameetman* v. *City of Chicago* (7th Cir. 1985) 776 F.2d 636, 643.)

[16] A recent survey of mobilehome parks in California found that approximately 72 percent of the mobilehome park residents in this state were 55 years of age or older. (See Cal. Dept. of Housing & Community Development, Mobilehome Parks in California: A Survey of Mobilehome Parks Owners Pursuant to SB 1835, *supra,* p. 31.)

[17] Plaintiffs have raised two additional claims that are patently without merit. Plaintiffs initially argue that even if defendants' 25-years-or-older rule is sanctioned by section 798.76, the rule should be struck down as an invalid "restraint on alienation" in violation of section 711—"[c]onditions restraining alienation, when repugnant to the interest created, are void"—because it operates to restrain owners of mobilehomes from selling their mobilehomes to families who wish to reside in the mobilehome but include persons who are under 25. Section 711, however, simply embodies a statutory limitation on "unreasonable" restraints on alienation (see, e.g., *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943, 948 [148 Cal.Rptr. 379, 582 P.2d 970]), and the statutory condonation of defendants' rule in sec-

V

For the reasons discussed above, we conclude that the private mobile-home park rule at issue here—limiting residence to persons 25 years or older—is not invalid under current California law. Although recent federal legislation will in the future apparently affect the validity of such a rule as applied to families with minor children, defendants did not violate plaintiffs' statutory or constitutional rights in applying the rule during the time period at issue in this case.

The judgment of the Court of Appeal is reversed and the case is remanded with directions to deny the peremptory writ.

Lucas, C. J., Panelli, J., Eagleson, J., and Kaufman, J., concurred.

**MOSK, J.**—I concur in the majority opinion except insofar as it holds that a mobilehome park owner may, under section 798.76 of the Civil Code,[1] limit residence in the park to any age group he deems appropriate, so that the park may not only exclude children, but may limit the age of adult residents at the whim of the owner. Instead, I view the language of section 798.76 as clearly indicating an intent to limit the owner's discretion in prescribing age limitations to persons 18 years of age or older. The legislative history offered by the majority does not support a contrary conclusion.

The majority's holding creates a broad exception to the command of section 51.2 prohibiting discrimination in the sale or rental of housing, since it would allow a park to discriminate against adults of any age, including senior citizens. Such a construction not only violates the settled principle that exceptions to a statute must be narrowly construed and will not be extended beyond the import of their terms (*City of National City* v. *Fritz* (1949) 33 Cal.2d 635, 636 [204 P.2d 7]; *Marrujo* v. *Hunt* (1977) 71 Cal.App.3d 972, 977 [138 Cal.Rptr. 220]), but also it finds no support in either the language of the section nor in its legislative history.

The meaning of "adults" in section 798.76 is set forth in section 25.1, subdivision (b), which defines that term as a person "18 years of age and

tion 798.76 obviously constitutes a legislative determination as to the reasonableness of any indirect restraint on alienation that may flow from such a rule.

Plaintiffs also argue that section 798.76 improperly delegates the state's zoning powers to private individuals. As we have discussed above, however, a private mobilehome park owner's authority to establish such rules flows from the owner's common law property rights, not section 798.76 (see p. 388, *ante*), and, in any event, the restrictions that a private owner imposes on his own property cannot properly be viewed as the exercise of governmental legislative power.

[1] All statutory references are to the Civil Code.

older." We must presume that when the Legislature enacted section 798.76 it was aware of this definition.

The majority's reliance on the word "any" in the statute (which allows adoption of "any" rule limiting residents to "adults only") as calling for a contrary conclusion is unwarranted. According to their holding, a rule limiting residence to persons 25 years or older, or 45 years or older, or between 40 and 50 years only can be viewed as an "adults only" rule as well as one which confines residence to those 18 years of age or older. The problem with this theory is that it disregards the meaning of the word "adults" in section 25.1 as a person 18 years old or older. While persons over that age are undoubtedly adults as well, I do not see how it can be denied that under this definition every person 18 years of age or older is also an adult.

Section 798.76 does not allow a park owner to adopt "any" age restriction on mobilehome park residency, but only "any" restriction that imposes an "adults only" policy, i.e., a policy that confines residents to persons 18 years of age and older.[2] The section permits discrimination only between children and those defined as "adults"; it does not authorize a park owner to discriminate against adults between the age of 18 and 25. The interpretation advocated by the majority would render the critical word "adults" surplusage, and substitute for that word a provision allowing any regulation by a park owner relating to age.[3]

Contrary to the claim of the majority, the legislative history of section 798.76 does not support its construction of the section. They suggest the section cannot be interpreted "narrowly" to restrict a mobilehome park owner's alternatives in devising age-based rules because as a general matter the owner of such a park has discretion to establish rules to control the character of the park. But section 51.2, the Unruh Act, prohibits discrimination in housing on the basis of age, and section 798.76 provides the only exception to this prohibition insofar as mobilehome parks are concerned.[4]

---

[2] The construction of section 798.76 as prohibiting discrimination against any person over 18 years of age does not render the word "any" surplusage. For example, by employing that word, the Legislature could have intended to allow a park owner to designate some areas for adults only, while allowing minors to reside in other parts of the park, or to maintain an "adults only" designation during some seasons and not in others.

[3] The opinion of the Attorney General relied on in footnote 5 of the majority opinion does not support its conclusion. While the opinion cited observes that section 798.76 "*could* embrace a variety of more narrowly defined adults-only rules," it does not decide the issue. (65 Ops.Cal.Atty.Gen. 559, 561-562 (1982), italics added.) In contrast, as the majority recognize (fn. 7 at p. 382), the Fair Employment and Housing Commission has held that a park owner may not discriminate against persons 18 years old or older.

[4] As discussed below, section 51.2 does contain an exception for housing for senior citizens, as specified in section 51.3, but the latter section specifically states that it does not apply to mobilehomes.

Therefore, any general authorization for an owner to restrict residency on the basis of age is subject to the strictures set forth in section 51.2, unless the limitation comes within section 798.76.

The survey of mobilehome parks referred to by the majority, showing that some owners have adopted age-based discriminatory policies among adults, does not indicate that the Legislature intended to approve such policies. The survey antedated the 1975 enactment of the predecessor to section 798.6 by many years, and there is not a shred of evidence that such age-based rules were in existence in 1975, or even if they were, that the Legislature was aware of them and intended to enshrine the dubious practice into law. It is most unlikely, if it had such an intent, that it would have chosen the language of section 798.76 to achieve that result.

Furthermore, I disagree with the majority's construction of section 51.3 in relation to section 51.2 of the Unruh Act. The Unruh Act, in section 51.2, prohibits discrimination in housing on the basis of age, except for housing for senior citizens constructed pursuant to section 51.3. The latter section, by its own terms, provides that the definitions set forth therein, including the definition of "housing" as excluding mobilehomes (subd. (c)(4)), apply only "for purposes of this section." It seems clear to me, therefore, that the discrimination on the basis of age allowed by section 51.2 extends only to the housing units described in section 51.3. Since mobilehomes are expressly excluded from section 51.3, it follows that the general prohibition against age discrimination in section 51.2 prevails, except, of course, to the extent provided by section 798.76.

The majority's reliance on the legislative history of the 1984 amendments to sections 51.2 and 51.3 is also unpersuasive. They assume that because prior to the 1984 amendment of section 51.2 and the enactment of section 51.3, an amendment to section 798.76 which would have limited enforcement of its "adults only" provision to parks specially designed for senior citizens (and disabled persons) was deleted, the Legislature must have reached a compromise to exclude mobilehomes from the reach of the non-discrimination provisions of the Unruh Act.

It is well settled that the failure to amend an existing statute is inconclusive and has little interpretive value because conflicting inferences may be drawn from such a failure. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1396 [241 Cal.Rptr. 67, 743 P.2d 1323]; *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 735, fn. 7 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]; *Burgess* v. *Board of Education* (1974) 41 Cal.App.3d 571, 580-581 [116 Cal.Rptr. 183]; *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263

Cal.App.2d 41, 57-58 [69 Cal.Rptr. 480].) This would be true even if the Legislature as a whole had disapproved the amendment rather than, as here, deletion thereof by a legislative committee.

The wisdom of this rule is pointedly illustrated by the circumstances of this case. In my view, a more reasonable explanation for the deletion of the amendment to section 798.76 is that the committee intended to continue to allow mobilehome parks to exclude children, not that it desired to except parks from the reach of the nondiscrimination provisions of section 51.2. Therefore, I cannot agree with the majority's reasoning that elimination of the amendment supports its interpretation of sections 51.2 and 51.3, in the face of the clear language used in those provisions.

In sum, the language of sections 798.76, 51.2 and 51.3 may not be construed to allow age discrimination in mobilehome parks except to limit residence to those 18 years of age or older. The legislative history relied on by the majority does not support their determination that the Legislature did not really mean what it clearly said, i.e., that it did not sanction age discrimination among adults in such parks.

Broussard, J., concurred.