[No. B042961. Second Dist., Div. Five. May 10, 1990.]

COLONY COVE ASSOCIATES, Plaintiff and Respondent, v. DAVID BROWN et al., Defendants and Appellants.

COLONY COVE ASSOCIATES, Plaintiff and Respondent, v. MORGAN GAYVERT et al., Defendants and Appellants.

COUNSEL

Carl B. Pearlston, Jr., for Defendants and Appellants.

Carolyn H. Carlburg and Margaret A. Bonertz for Plaintiff and Respondent.

OPINION

BOREN, J.—Respondent, owner of a mobilehome park, enacted a park rule restricting residency to senior citizens, age 55 or older. Respondent then sought to evict appellants, tenants in the park, because appellants' children, minors born after the park's enactment of its age restriction, were not "grandfathered" as were their parents, who had resided in the park

prior to the rule. Appellants appeal following summary judgments granted in unlawful detainer actions brought by respondent.[1] We hold that the enforcement of the mobilehome park's senior citizen, age 55 or older, resident restriction does not run afoul of constitutional proscriptions, relevant state statutes, or the Fair Housing Amendments Act of 1988.

## FACTS

In August of 1976, Morgan Gayvert, age 29, purchased a mobilehome in the Colony Cove Mobile Home Park Community in Carson. Thereafter, Morgan Gayvert married, and his wife, Susan, moved into the park in May of 1984. In November of 1984, David Brown, age 23, and his wife Laurie also purchased a mobilehome in the same community. The Gayverts and the Browns leased spaces for their mobilehomes on month-to-month tenancies from the Colony Cove Associates, which rented a total of 429 spaces in the community. The terms of the rental agreements included acknowledgment of and agreement to abide by the mobilehome park's present and future rules and regulations. One of the rules and regulations in effect at the time when both the Browns and Gayverts rented spaces in the park specified that "Colony Cove is an adult Park. Persons under 21 years of age will not be accepted as Residents of the Park . . . . If a family is expected, it will be necessary for the Resident to vacate."

On March 20, 1985, and April 25, 1985, tenants in the Colony Cove Mobile Home Park Community were advised by the management of a rule change effective October 15, 1985, whereby the park was to be "limited to senior adults only," meaning adults "55 years of age or older." By the terms of the new rule, "only those persons who meet the requirements of the seniors-only rule shall be admitted as tenants of the Park" in the future. However, the rule also provided that "No person who was a tenant of the Park on March 20, 1985, when notice of this rule change was first given, shall be deemed in violation of the seniors-only rule, regardless of whether or not such person is a senior adult on or before this amendment becomes effective."

In September of 1985, the Browns' child was born. In December of 1987, the Gayverts' child was born. The Browns and Gayverts were given notices of their failure to comply with park rules. Thereafter, respondent brought successful unlawful detainer actions. Stays were granted, and these appeals followed.

---

[1] This court granted appellants' motion to consolidate the appeals of appellants David and Laurie Brown and appellants Morgan and Susan Gayvert.

## Discussion

### I. Constitutional Concerns

In *Schmidt* v. *Superior Court* (1989) 48 Cal.3d 370 [256 Cal.Rptr. 750, 769 P.2d 932], the Supreme Court held that a mobilehome park rule limiting residence to adults 25 years or older was not unconstitutional. The *Schmidt* court assumed arguendo the existence of state action such as to warrant applying constitutional concerns to private conduct (*id.* at pp. 388-389, fn. 14), and concluded that the mobilehome park rule was not, as or when applied, either irrational or arbitrary and did not violate the constitutional rights to equal protection or familial privacy. (*Id.* at pp. 390-391.)

In sustaining the constitutionality of the mobilehome park rule, the court reasoned as follows: "[A]lthough the constitutional right of 'familial privacy' undoubtedly encompasses a parent's right to live with his or her child (see, e.g., *Moore* [v. *East Cleveland* (1977)] 431 U.S. 494, 500-506 [52 L.Ed.2d 531, 538-541, 97 S.Ct. 1932]), the mobilehome park's 25-years-or-older policy at issue here does not, of course, purport to compel the separation of parent and child or to preclude the family from living together in an entire city (cf., e.g., *Moore, supra,* 431 U.S. 494; *Molino* v. *Mayer and Council of Bor. of Glassboro* (1971) 116 N.J.Super. 195 [281 A.2d 401, 404-406) or neighborhood (cf. [*City of Santa Barbara* v.] *Adamson* [(1980)] 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219]), but simply denies the family access to a limited number of housing units. In *Bynes* v. *Toll* (2d Cir. 1975) 512 F.2d 252, 254-256, the Second Circuit upheld a state university regulation excluding married students with children from university housing, explaining that the students' unquestioned constitutional right to procreate and to bring up their children did not mean that the university was 'constitutionally mandated to provide them campus housing to perform their protected prerogatives' (512 F.2d at p. 255), and, on similar grounds, courts of other states which have considered the validity of age-based housing regulations comparable to the rule at issue here—in the absence of a legislative measure barring such age restrictions —uniformly upheld the general constitutional validity of such rules. [Citations.] Particularly in light of the distinct characteristics of mobilehome parks—e.g, the generally greater percentage of older residents, the smaller size of the units, the more substantial potential lack of privacy and the greater expense that might have to be incurred in rendering such a park safe for children residents—we agree with the conclusion of the above cited cases that such an age-based regulation is neither irrational nor arbitrary or otherwise vulnerable to constitutional attack." (*Schmidt* v. *Superior Court, supra,* 48 Cal.3d at pp. 389-390, fns. omitted.)

■ The reasoning in *Schmidt* is particularly compelling here in the context of not merely an adult-only but a senior citizen age restriction rule. In view of the recognized desirability of special living environments and services providing communal educational and recreational facilities which meet the physical and social needs of senior citizens (see Civ. Code, §§ 51.2, subd. (a) and 51.3, subd. (a); cf. *Huntington Landmark Adult Community Assn.* v. *Ross* (1989) 213 Cal.App.3d 1012, 1018-1019 [261 Cal.Rptr. 875]), respondent's age-based discrimination is "neither irrational nor arbitrary or otherwise vulnerable to constitutional attack." (*Schmidt* v. *Superior Court, supra*, 48 Cal.3d at p. 390.)

## II. State Statutory Provisions

Relevant California statutes do not preclude the establishment and enforcement of a senior citizen age qualification rule in a private mobilehome park. In analyzing relevant state statutes, *Schmidt* v. *Superior Court, supra*, 48 Cal.3d 370 held that a private mobilehome park rule which limited residence in the park to persons 25 years or older, as permitted by Civil Code section 798.76,[2] did not violate the broad antidiscrimination policy embodied in the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), even though the park rule operated to exclude families with children younger than 25 years of age. Most significantly, the amendments to the Unruh Act which address age-based discrimination in housing, Civil Code sections 51.2 and 51.3,[3] reflect a legislative intent specifically to exclude mobilehome parks from the reach of the act. (*Schmidt* v. *Superior Court, supra*, 48 Cal.3d at pp. 382-388.)

Although the exclusion of mobilehome parks from the reach of the Unruh Act is dispositive of the state statutory issue here, we also note that the

---

[2] Civil Code section 798.76 provides as follows: "The management may require that a purchaser of a mobilehome which will remain in the park, comply with any rule or regulation limiting residence to adults only."

[3] Civil Code section 51.2 provides, in pertinent part, as follows: "(a) Section 51 shall be construed to prohibit a business establishment from discriminating in the sale or rental of housing based upon age. Where accommodations are designed to meet the physical and social needs of senior citizens, a business establishment may establish and preserve such housing for senior citizens, pursuant to Section 51.3 of the Civil Code."

Civil Code section 51.3 provides, in pertinent part, as follows: "(a) The Legislature finds and declares that this section is essential to establish and preserve specially designed accessible housing for senior citizens. There are senior citizens who need special living environments and services, and find that there is an inadequate supply of this type of housing in the state. [¶] (b) The Legislature finds and declares that different age limitations for senior citizen housing are appropriate in recognition of the size of a development in relationship to the community in which it is located. [¶] (c) For the purposes of this section, the following definitions apply: . . . [¶] (4) 'Dwelling unit' or 'housing' means any residential accommodation other than a mobilehome."

amendments to the Unruh Act allow age-based discrimination favoring senior citizens where, for example, the housing qualifies as a "senior citizen housing development" within the meaning of Civil Code section 51.3, subdivision (c)(3). (See *Huntington Landmark Adult Community Assn. v. Ross, supra,* 213 Cal.App.3d at pp. 1018-1019.) The amendments to the Unruh Act were enacted in response to a prior judicial expression of the appropriateness of age-based discrimination favoring senior citizens. In *Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161], where the court held the general provisions of the Unruh Act prohibited an ordinary apartment complex from adopting a rule which excluded all families with children from the complex, the court emphasized that the age-based exclusionary policy which it proscribed was distinguishable from "the age-limited admission policies of retirement communities or housing complexes reserved for older citizens." (*Id.* at p. 742.) As the court observed, "In light of the public policy reflected by [legislation allowing for adults-only housing in mobile home parks (Civ. Code, § 798.76)], age qualifications as to a housing facility reserved for older citizens can operate as a reasonable and permissible means under the Unruh Act of establishing and preserving specialized facilities for those particularly in need of such services or environment. [Citations.] Such a specialized institution designed to meet a social need differs fundamentally from the wholesale exclusion of children from an apartment complex otherwise open to the general public." (*Id.* at pp. 742-743, fns. omitted.)

With the declared intent "to clarify the holdings in *Marina Point, Ltd. v. Wolfson* [, *supra*]" (Civ. Code, § 51.2, subd. (b)), and another related decision,[4] the Legislature enacted Civil Code sections 51.2 and 51.3. (See *Schmidt v. Superior Court, supra,* 48 Cal.3d at pp. 383-384.) Section 51.2, by its very terms, makes an exception in certain contexts for the prohibition against discrimination in housing based on age where the discrimination is designed to provide "housing for senior citizens." Similarly, section 51.3, by its terms, acknowledges the need "to establish and preserve specially designed accessible housing for senior citizens." Accordingly, the Unruh Act, as amended in response to *Marina Point, Ltd. v. Wolfson, supra,* 30 Cal.3d 721, intended to establish and preserve accessible housing for senior citizens and, within the parameters outlined in Civil Code sections 51.2 and 51.3, to exclude such housing from the general proscription against age-based discrimination.

---

[4] *O'Connor v. Village Green Owners Assn.* (1983) 33 Cal.3d 790 [191 Cal.Rptr. 320, 662 P.2d 427] applied the holding in *Marina Point* to proscribe a blanket rule which prohibited families with children from purchasing units for sale by a condominium association.

III.   The Fair Housing Amendments Act of 1988

■   The contention that the Fair Housing Amendments Act of 1988 (Pub.L. No. 100-430 (Sept. 13, 1988) 102 Stat. 1619, 1988 U.S. Code Cong. & Admin. News, No. 8), effective March 1989, invalidates respondent's adults-only policy and proscribes eviction proceedings on familial status grounds is unavailing. In applying federal legislation to the present situation (see *Gulf Offshore Co.* v. *Mobil Oil Corp.* (1981) 453 U.S. 473, 477-478 [69 L.Ed.2d 784, 101 S.Ct. 2870]), it is apparent that the Fair Housing Amendments Act makes it generally unlawful to discriminate in the sale or rental of housing or to make a "dwelling" otherwise unavailable on the basis of "familial status," as well as on the previously forbidden grounds of race, color, religion, sex, or national origin. (42 U.S.C. § 3604.) The definition of the term "dwelling" in the Fair Housing Act includes mobilehome sites. (See, e.g., *United States* v. *Warwick Mobile Homes Estates, Inc.* (4th Cir. 1976) 537 F.2d 1148; *United States* v. *Grooms* (M.D.Fla. 1972) 348 F.Supp. 1130, 1133.) The term "familial status" is defined as families which include children under the age of 18. (42 U.S.C. § 3602(k).)

While the amendment to the Fair Housing Act thus generally bars discrimination in mobilehome housing against families with children under 18, it also, however, creates an exception for "housing for older persons" in which discrimination on the basis of familial status is not prohibited. (42 U.S.C. § 3607(b)(1).) "Housing for older persons" is legislatively defined to include, in part, housing which is (1) "intended for, and solely occupied by, persons 62 years of age or older," or (2) "intended and operated for occupancy by at least one person 55 years of age or older per unit." (42 U.S.C. § 3607(b)(2)(B) & (b)(2)(C).)

In determining whether "housing for older persons" qualifies within the meaning of the latter category involving "occupancy by at least one person 55 years of age or older per unit," the amendment to the Fair Housing Act requires that "the Secretary [of Housing and Urban Development (HUD)] shall develop regulations which include at least the following requirements: (i) the existence of significant facilities and services specifically designed to meet the physical or social needs of older persons, or if the provision of such facilities and services is not practicable, that such housing is necessary to provide important housing opportunities for older persons; and. [¶] (ii) that at least 80 percent of the units are occupied by at least one person 55 years of age or older per unit; and [¶] (iii) the publication of, and adherence to, policies and procedures which demonstrate an intent by the owner or manager to provide housing for persons 55 years of age or older." (42 U.S.C. § 3607(b)(2)(C)(i-iii).)

The amendment further contains a "grandfather clause" in section 3607(b)(3)(A). That section provides that housing will not be disqualified as "housing for older persons" merely because "persons residing in such housing as of [September 13, 1988]," do not meet the requirements under either the 62 or 55 years of age or older categories, so long as any new occupants meet the age requirements under either of those two categories, as specified in section 3607(b)(2)(B) or (b)(2)(C).

Appellants direct us to the Secretary of HUD's development of regulations (see 24 C.F.R. § 100.304) which address the requirement of "significant facilities and services specifically designed to meet the physical or social needs of older persons" or, alternatively, where such significant facilities and services are not practicable to provide, the requirement of a determination that "such housing is necessary to provide important housing opportunities for older persons" (42 U.S.C. § 3607(b)(2)(C)(i)). Appellants assert that in view of these regulations, the trial court should have had before it extensive factual information to determine the existence of the requisite "significant facilities and services" and the requirements pertinent to the "at least 80 percent . . . 55 years of age or older" factor (see 42 U.S.C. § 3607(b)(2)(C)(i-iii)). The need for such extensive factual information, appellants urge, leaves factual questions to be resolved and renders inappropriate a summary judgment.

However, a showing of compliance with HUD regulations is not required. Although the Secretary of HUD is legislatively mandated to develop regulations to be used in determining whether housing qualifies as "housing for older persons," that is for HUD's own administrative purposes.[5] It was not intended that the Secretary of HUD promulgate regulations for the purpose of evaluating, as here, a purported defense to unlawful detainer actions in state courts. Rather, HUD's regulations were intended, for example, to assist in the evaluation of administrative complaints before HUD brought by persons claiming to be aggrieved by a discriminatory housing practice. (42 U.S.C. § 3610; see 24 C.F.R. § 103.)

It is sufficient for our purpose in reviewing the grant of a motion for summary judgment that the mobilehome park, as indicated by its age restriction regulation, was "intended and operated for occupancy by least one person 55 years of age or older per unit." (42 U.S.C. § 3607(b)(2)(C).) Moreover, as a matter of law, to the extent that units in the park are occupied by persons not in that category, "The act also contains a 'grandfather clause,' providing that persons under the applicable age limits who

---

[5] The operative wording of the statute is as follows: "In determining whether housing qualifies as housing for older persons under this subsection, the Secretary shall develop regulations which require at least the following factors . . . ." (42 U.S.C. § 3607(b)(2)(C).)

were residing in housing when the federal act was enacted will not disqualify the housing from the statutory exemption for housing for older persons so long as the applicable age requirements are applied to all new occupants. (42 U.S.C. § 3607(b)(3).)" (*Schmidt* v. *Superior Court, supra*, 48 Cal.3d at p. 375, fn. 4.) Accordingly, there were no triable issues of material fact, and summary judgment was appropriate. (See *AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203]; Code Civ. Proc., § 437c, subd. (c).)

Finally, we note that both sets of appellants did administratively pursue issues regarding whether the mobilehome park qualified, within the more particular terms of criteria established for HUD's regulations, as "housing for older persons." Appellants' administrative complaints before HUD (see 42 U.S.C. § 3610) alleging discriminatory housing practices were fully investigated and denied. (Judicial notice request granted April 26, 1990.) After an on-site investigation, HUD determined that, consistent with the criteria established for HUD's regulations for assessing whether housing qualifies as "housing for older persons" (see 42 U.S.C. § 3607(b)(2)(C)(i-iii), the Colony Cove Mobile Home Park Community satisfied the following: (1) publication of, and adherence to, policies and procedures which demonstrate an intent of the owner or manager to provide housing for persons aged 55 or older; (2) the existence of an appropriate number of units occupied by at least one person 55 years of age or older, consistent with the "grandfather clause" (see 42 U.S.C. § 3607(b)(3)(A); 24 C.F.R. § 100.304(d)(1)); and (3) the existence of significant facilities and services designed to meet the physical or social needs of older persons, including congregate and accessible dining facility, auditorium, and recreation room and appropriate health care, social, recreational and educational programs. Accordingly, appellants' challenges as to more particular factual matters were investigated and resolved adversely to them in the federal administrative context.

## IV. Conclusion

We are aware of the plight of young couples with children who seek affordable housing. We also recognize the unique difficulties which arise when a mobilehome owner is forced to vacate a mobilehome park rental space. The Legislature has also acknowledged the critical importance of adequate housing for families. (See Health & Saf. Code, §§ 50001, 50003, 50003.3, 50004; Gov. Code, § 65913; *Marina Point, Ltd.* v. *Wolfson, supra*, 30 Cal.3d at p. 743.)[6] Discrimination against children in housing is at odds

---

[6] Health and Safety Code section 50001 provides: "The Legislature finds and declares that the subject of housing is of vital statewide importance to the health, safety, and welfare of the residents of this state, for the following reasons: [¶] (a) Decent housing is an essential moti-

with fundamental notions of humanity. "A society that sanctions wholesale discrimination against its children in obtaining housing engages in a suspect activity. Even the most primitive society fosters the protection of its young; such a society would hardly discriminate against children in their need for shelter . . . ." (*Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d at p. 744.)

Nonetheless, as discussed above, our legislative bodies have also addressed the competing interests and housing needs of older persons in our society. Consistent with our constitutional and legislative analysis, appellants' legitimate housing needs cannot be satisfied by the present attack upon legislation which provides for the establishment of senior citizen mobilehome parks.

## DISPOSITION

The judgments are affirmed. Respondent's request for sanctions is denied.

Lucas, P. J., and Ashby, J., concurred.

The petition of all appellants for review by the Supreme Court was denied August 10, 1990.

---

vating force in helping people achieve self-fulfillment in a free and democratic society. [¶] (b) Unsanitary, unsafe, overcrowded, or congested dwelling accommodations *or lack of decent housing* constitute conditions which cause an increase in, and spread of, disease and crime. [¶] (c) A healthy housing market is one in which residents of this state have a choice of housing opportunities and one in which the housing consumer may effectively choose within the free marketplace. [¶] (d) A healthy housing market is necessary both to achieve a healthy state economy and to avoid an unacceptable level of unemployment." (Italics added.)