Filed 9/3/13  In re J.T. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.T., et al., Persons Coming Under the Juvenile Court Law. | B245985 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK89841) |
| Plaintiff and Respondent, | |
| v. | |
| CHARMAIN T., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Judge.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

Appellant mother seeks to reverse the dependency court's order terminating her parental rights with respect to her two children. She contends that there was insufficient evidence that her children were adoptable.[1] We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Charmaine T. (mother) is the mother of J.T. (J.), born in April 2004, and Jesse T. (Jesse), born in September 2005. On April 19, 2011, mother left the children in the care of maternal grandmother. While mother was out, Orange County probation officers conducted a search of maternal grandmother's home and found cocaine residue on a spoon. Maternal grandmother admitted to using cocaine two days prior. The officers arrested maternal grandmother and took the children into protective custody.

The probation officers attempted to reach mother but she did not answer her phone. After approximately four hours, mother called back to inquire about her children. Mother acknowledged that she was aware that maternal grandmother had recently been incarcerated for drug-related charges and had only been released from jail within the previous two months. Mother also admitted to using marijuana up to twice weekly while she was the primary caretaker of the children. Father was incarcerated due to domestic violence and drug sales.

Both children reported that mother and father hit children with a belt and a hanger, leaving bruises and cuts on them. Jesse had a large scar on his chest which he

---

[1] Although mother's notice of appeal also challenges the court's denial of her section 388 petition, mother does not address this issue in her appeal. (*Huntington Landmark Adult Community Assn. v. Ross* (1989) 213 Cal.App.3d 1012, 1021 [contentions supported by neither argument nor citation of authority are deemed to be without foundation and to have been abandoned].)

said he received when father's nail cut into him when father grabbed him by the shirt.  J. reported that mother hit her in the face once, cutting her under her left eye.

The Department of Children and Family Services (Department) filed a dependency petition alleging that J. and Jesse came within the jurisdiction of the juvenile court within the meaning of Welfare and Institutions Code,[2] section 300, subdivisions (a)[3] and (b)[4] based on mother's and father's physical abuse of the children, mother's use of marijuana, mother's history of alcohol abuse, mother's decision to leave the children in the care of maternal grandmother, and the parents' domestic violence history.

On June 2, 2011, the Orange County juvenile court sustained the petition's allegations under section 300, subdivision (b), and declared J. and Jesse dependents of the court.  The court approved the case plan which provided for mother to participate in domestic violence counseling, a parenting class, and a drug treatment program.  Mother was granted monitored visitation with the children.

On June 7, 2011, the children were placed with maternal great-aunt.  In a status review report prepared for the six-month hearing, the Department reported that mother's

[2]    All further statutory references are to the Welfare and Institutions Code.

[3]    Section 300, subdivision (a), provides that a child comes within the jurisdiction of the juvenile court when the child has suffered, or there is a substantial risk the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parents.

[4]    Section 300, subdivision (b), provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child.

cooperation with the case plan was minimal. The Department also reported that the children enjoyed visiting with mother but that mother had not shown she had completed a drug or alcohol treatment program. The Orange County juvenile court found that mother had made minimal progress in alleviating the causes necessitating placement of the children. The court transferred the matter to Los Angeles County based on mother's residence and the children's placement there.

In a report prepared for the 12-month review hearing, the Department reported that the children remained with maternal great-aunt and were closely bonded with her. In addition, the Department found that maternal great-aunt was dedicated to working with the children's medical health providers to address the children's needs. Mother had visited the children on a sporadic basis. On June 1, 2012, the court terminated mother's reunification services and set the matter for a section 366.26 hearing.[5]

In an interim review report filed in September 2012, the Department reported that maternal great-aunt consistently expressed her desire to provide the children with a permanent home through adoption. Furthermore, the children stated that they loved maternal great-aunt and were happy living with her. The children's therapist reported in September 2012 that when the children were asked where they wanted to live, J. told the therapist that she was "not sure" and Jesse responded by stating that he was "fine" at maternal great-aunt's house and liked it there. The therapist also reported that Jesse was

---

[5]     Section 366.26 governs the termination of parental rights of children adjudged dependents of the court.

4

disappointed that he had not moved back with mother, and that his infrequent contact with mother made him feel sad.

At the section 366.26 hearing on November 9, 2012, mother's counsel objected to the termination of parental rights on the grounds that maternal great-aunt had not completed a home study. The court responded that a home study is not a prerequisite to the termination of parental rights and that, furthermore, there was no evidence of any barrier to completing the adoption. The children's counsel stated that maternal great-aunt said that she was interested in adopting the children, and that depending on the children's wishes, she would either adopt them or act as their legal guardian. The court found by clear and convincing evidence that the children would likely be adopted in a reasonable amount of time and terminated parental rights. Mother filed a timely notice of appeal.

### *CONTENTIONS*

Mother contends that substantial evidence does not support the court's finding that the children were adoptable.[6]

---

[6] The Department argues that mother forfeited her right to challenge the court's finding that the children were adoptable based on her failure to raise this argument in the trial court. There is a split of authority on whether such a challenge may be forfeited. (*In re Brian P.* (2002) 99 Cal.App.4th 616, 623 ["a claim that there was insufficient evidence of the child's adoptability at a contested hearing is not waived by failure to argue the issue in the juvenile court."]; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-412 ("If the complaint on appeal be deemed not the admissibility, as such, of inadequate assessment reports, but substantive insufficiently to establish requisite findings, this complaint, too, was waived by failure to raise it at the trial level."].) Even if we find that the argument was not forfeited, it fails on the merits as explained below.

*DISCUSSION*

The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted. (Section 366.26, subd. (c)(1).) " 'In reviewing the juvenile court's order, we determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that [the child] was likely to be adopted within a reasonable time. [Citations.]' We give the court's finding of adoptability the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming. [Citation.]" (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1561-1562.)

"The issue of adoptability posed in a section 366.26 hearing focuses on the *minor,* e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.]" (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.) "[T]he fact that a prospective adoptive family has been identified is an indication that the child is likely to be adopted within a reasonable time." (*In re I.I.* (2008) 168 Cal.App.4th 857, 870.)

Mother first contends that there was no substantial evidence that the children were adoptable because the record contained insufficient information about maternal great-aunt's willingness to adopt the children. "[A] prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." (*In re Sarah M.*, *supra,* 22 Cal.App.4th at p. 1649.) Mother contends that maternal great-aunt equivocated about her willingness to adopt the children citing to maternal

great-aunt's statement that although she wanted to adopt the children, depending on the children's wishes, she was willing to either adopt them or act as their legal guardian. However, that maternal great-aunt was willing to consider the children's wishes about being adopted does not show that she was unwilling to provide them with a permanent home through adoption. Furthermore, the Department reported that maternal great-aunt consistently expressed her desire to adopt the children.

Mother also argues that the record contained insufficient evidence about the current status of Jesse's physical health. A child's physical condition constitutes only one of multiple factors the court must consider in determining whether a child is adoptable. (*In re Sarah M., supra,* 22 Cal.App.4th at p. 1649.) Here, the record reflected that maternal great-aunt was dedicated to working with Jesse's and J.'s medical care providers to address the children's needs. Accordingly, the evidence indicated that maternal great-aunt was aware of Jesse's physical condition and committed to providing him with the care he needed. Maternal great-aunt's continued interest in adopting Jesse despite his medical issues constituted evidence that his physical condition was not likely to dissuade individuals from adopting him. (*Ibid.*) Therefore, mother has not shown that the court's finding of adoptability was unsupported by substantial evidence merely because the record did not contain certain information about Jesse's physical health.

Lastly, mother contends that the record did not contain a statement from the children expressing their wishes about adoption, and that there was evidence that the children wanted to reside with mother. Although section 366.26, subdivision (h)

7

requires that the court at the selection and implementation hearing "consider the wishes of the child," the juvenile court is not bound by the wishes of a child less than 12 years of age. (Section 366.26, subd. (c)(1)(b)(ii); *In re Joshua G.* (2005) 129 Cal.App.4th 189, 201.)

Here, at the time of the hearing, J. was eight years old and Jesse was six years old. The therapist's report indicated that when the children were asked where they wanted to live, J. told the therapist that she was "not sure" and Jesse responded by stating that he was "fine" at maternal great-aunt's house and liked it there. Furthermore, the children stated that they loved maternal great-aunt and were happy living with her. Although Jesse also said that he was disappointed he had not been able to move back with mother, this could mean that he was disappointed mother had not made sufficient efforts to reunify with him. Accordingly, the record provided sufficient evidence by which the juvenile court could ascertain the children's wishes about adoption. In the absence of evidence to the contrary, a reviewing court presumes the trial court performed its statutory duty. (Evid. Code, § 664.) Therefore, we presume the juvenile court took the evidence regarding the children's wishes about adoption into consideration.

## DISPOSITION

The order terminating mother's parental rights is affirmed.


***NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS***


CROSKEY, J.


WE CONCUR:


KLEIN, P. J.


ALDRICH, J.


9